IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | | |
|---|---|---|
| JOSEPH A. BLANDO, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No.: 12-0559-CV-W-SOW |
| | ) | |
| BUSINESS MEN'S ASSURANCE | ) | |
| COMPANY OF AMERICA, et al., | ) | |
| | ) | |
| Defendants. | ) | |

ORDER

Before the Court is Athene Holding Ltd.'s Combined Motion to Dismiss for Lack of Personal Jurisdiction, Failure to State a Claim, and Lack of Valid Service (Doc. #38). For the following reasons, it is granted.

I. Background[1]

Plaintiff Joseph Blando, a citizen and resident of Missouri, worked as an operating engineer in a building (the BMA Tower) that was formerly owned by Business Men's Assurance Company of America ("BMA"). Plaintiff alleges that, during the construction of the BMA Tower, he was subjected to sprayed limpet asbestos. Plaintiff alleges that as a result of his exposure to the asbestos, he developed pleural thickening, a calcified granuloma, and other asbestos-related diseases.

---

[1] The facts are taken from plaintiff's Petition, affidavits and declarations submitted by the parties. Generally, a court should examine only the complaint when deciding a motion to dismiss. Porous Media Corp. v. Pall Corp., 186 F.3d 1077, 1079 (8th Cir. 1999) (citation omitted). However, for a motion to dismiss for lack of personal jurisdiction, a court may look to the pleadings, affidavits submitted by both parties, and other submitted documents. Dakota Indus., Inc. v. Dakota Sportswear, Inc., 946 F.2d 1384, 1387 (8th Cir. 1991) (citation omitted); see Dever v. Hentzen Coatings, Inc., 380 F.3d 1070, 1072 (8th Cir. 2004) (citations omitted).

In December 2009, plaintiff, along with his wife, filed suit against BMA, Liberty Life Insurance Company ("Liberty") f/k/a BMA, and Harry Mosby in Missouri state court, alleging claims for premises liability, negligence, and false representations. In April 2012, plaintiff obtained an interlocutory default against Liberty for its apparent failure to file an Answer. The state court later set aside the interlocutory default against Liberty, while contemporaneously allowing plaintiff the opportunity to add BMA and Liberty's successor, Athene Annuity & Life Assurance Company ("Athene Annuity"), as well as any additional successors to the named parties as a defendant in the state case. Plaintiff then joined defendant Athene Holding LTD ("AHL"), alleging that AHL is the successor to Athene Annuity and holds responsibility for the debts and liabilities of Athene Annuity. With Athene Annuity's consent, AHL removed the case to federal court pursuant to the Court's diversity jurisdiction.

Because there has been considerable confusion in this case as to which defendants are proper parties, a brief background is necessary. In 2006, Liberty merged into BMA, and BMA changed its name to Liberty. In 2010, Liberty's common stock was owned by RBC Insurance Holdings (USA) Inc. ("RBC"). On April 29, 2011, AHL acquired 100% of the common stock of Liberty from RBC. After this transaction, Liberty changed its name to Athene Annuity. Thus, Athene Annuity, Liberty, and BMA are the same entity. Athene Annuity is a Delaware corporation with its principal place of business in South Carolina. AHL is a Bermuda corporation with its principal place of business in Bermuda.

Because AHL has challenged the Court's jurisdiction to hear this case, the Court must consider facts concerning AHL's relationship with Missouri. In this regard, the Court considers the affidavits of Suzanne Haynsworth, Assistant Counsel for Athene Annuity, and Tab Shanafelt, Chief Legal Officer for AHL. As pertinent to the personal jurisdiction issues, they state:

- AHL owns the stock, not the assets or liabilities, of Athene Annuity.

- AHL is not authorized to do business in Missouri.

- AHL has not transacted business in Missouri, contracted to supply services in Missouri, derived any revenue in Missouri, rendered any services in Missouri, solicited business in Missouri, or engaged in any conduct in Missouri.

- AHL has no property in Missouri, nor any agents or employees in Missouri.

- AHL is not the corporate successor to Liberty n/k/a Athene Annuity.

AHL moves the Court to dismiss plaintiff's claims against it for three reasons. First, the Court lacks personal jurisdiction. Second, plaintiff has failed to state a claim for which relief can be granted under Twombly/Iqbal. Lastly, the Court lacks jurisdiction over AHL because plaintiff has failed to effect service on AHL as required by Federal Rule of Civil Procedure 4. Because the Court concludes that it lacks personal jurisdiction over AHL, it need not address AHL's remaining arguments.

## II. Standard

Pursuant to Fed. R. Civ. P. 12(b)(2), AHL moves the Court to dismiss plaintiff's claims for lack of personal jurisdiction. To survive a motion to dismiss for lack of personal jurisdiction, plaintiff bears the burden of establishing that personal jurisdiction exists over AHL. See Gould v. P.T. Krakatau Steel, 957 F.2d 573, 575 (8th Cir. 1992). Plaintiff need only make a prima facie showing of jurisdiction. Bell Paper Box, Inc. v. U.S. Kids, Inc., 22 F.3d 816, 818 (8th Cir. 1994) (quotations and citation omitted). Plaintiff "must state sufficient facts in the complaint to support a reasonable inference that the defendants can be subjected to jurisdiction within the state. Once jurisdiction has been controverted or denied, the plaintiff has the burden of proving such facts." Dever v. Hentzen Coatings, Inc., 380 F.3d 1070, 1072 (8th Cir. 2004). Plaintiff may make his prima facie showing of jurisdiction by relying on affidavits, exhibits, or other

evidence. Romak USA, Inc. v. Rich, 384 F.3d 979, 983 (8th Cir. 2004). The Court "must view the evidence in the light most favorable to the plaintiff and resolve all factual conflicts in the plaintiff's favor." Digi-Tel Holdings, Inc. v. Proteq Telecomms. (PTE), Ltd., 89 F.3d 519, 522 (8th Cir. 1996) (citation omitted).

## III. Discussion

### A. Specific Jurisdiction

AHL contends that it has not maintained any contacts with Missouri that would justify the exercise of either specific or general jurisdiction. The Court can make short work of any claim that AHL is subject to the Court's specific jurisdiction, because plaintiff has not made any arguments in his brief that he believes the Court has specific jurisdiction over AHL. Indeed, plaintiff has not argued that his claims arise from or relate to AHL's actions within Missouri.

Plaintiff's more vigorous argument is that in purchasing all of Liberty's stock, AHL "placed itself in the shoes of BMA and Liberty."[2] Plaintiff argues that if the Court does not impute liability onto AHL, that "any foreign corporation purchasing the entire stock of a corporation . . . would not be subject to jurisdiction in Missouri." Plaintiff cites Apco Oil Corp. v. Turpin, 490 S.W.2d 400 (Mo. Ct. App. 1973) and Chemical Design, Inc. v. Am. Standard, Inc., 847 S.W.2d 488 (Mo. Ct. App. 1993) for his position.[3]

Missouri courts addressing whether the purchaser of assets are subject to successor liability have generally found that when all of the assets of a corporation are sold or transferred the transferee is not liable for the transferor's liabilities. Chem. Design, Inc., 847 S.W.2d at 491;

---

[2] This is really a continuation theory.

[3] Plaintiff has not identified whether he believes this argument goes toward specific or general jurisdiction. The Court construes it as a specific jurisdiction argument.

Young v. Fulton Iron Works Co., 709 S.W.2d 927, 938 (Mo. Ct. App. 1986).  Like many rules, this rule is subject to exceptions, such as:

> (1) when the purchaser expressly or impliedly agrees to assume the debts and liabilities; (2) when the transaction amounts to a consolidation or merger of the corporation; (3) when the purchasing corporation is merely a continuation of the selling corporation; (4) when the transaction is entered into fraudulently in order to escape liability for the debts and liabilities.

Id. (citing Young, 709 S.W.2d at 938, and Brockmann v. O'Neill, 565 S.W.2d 796, 798 (Mo. Ct. App. 1978)).  Although it is unclear which theory plaintiff argues applies, it appears that plaintiff is arguing the third exception applies–the mere continuation theory.  This argument fails, however.  The problem with plaintiff's argument in this case is that he has failed to submit any evidence regarding AHL's alleged continuation of any of the other defendants.  Indeed, Missouri courts deciding whether a transferee corporation may be liable under the mere continuation theory have looked to various forms of evidence, including whether there was a clear line of demarcation separating the corporate structure, organization, and management.  See Chem. Design Inc., 847 S.W.2d at 493.  Courts in Missouri have also considered whether the incorporators of the successor also incorporated the predecessor, whether the business operators are identical, and whether notice has been given of the transfer to employees or customers.  Medicine Shoppe Intern., Inc. v. S.B.S. Pill Dr., Inc., 336 F.3d 801, 804 (8th Cir. 2003) (applying Missouri law) (citing Roper Elec. Co. v. Quality Castings, Inc., 60 S.W.3d 708, 711-13 (Mo. Ct. App. 2001) and Flotte v. United Claims, Inc., 657 S.W.2d 387-388-89 (Mo. Ct. App. 1983)).  Here, there is absolutely no evidence argued or submitted by plaintiff to suggest that AHL was a mere continuation of BMA or Liberty.  Therefore, the "mere continuation" theory does not apply.

      In sum, plaintiff's argument that AHL is responsible for BMA's, Liberty's, and Athene

Annuity's liabilities simply because it bought Liberty's stock is without merit. Athene Annuity has not dissolved or left potential creditors with no way to satisfy a potential judgment as plaintiff suggests. In fact, Athene Annuity still exists and does business in the state of Missouri. Most importantly, in the event there is a judgment rendered in plaintiff's favor, Athene Annuity has provided evidence that it has sufficient assets to satisfy any potential judgment.

**B. General Jurisdiction**

The Court will turn to whether general jurisdiction exists in this case. To exercise personal jurisdiction over nonresident defendants, such as AHL, the Court must determine whether the defendant is subject to the forum state's long-arm statute and whether the exercise of personal jurisdiction would comport with due process. See Burlington Indus., Inc. v. Maples Indus., Inc., 97 F.3d 1100, 1102 (8th Cir. 1996); Romak, 384 F.3d at 984. "These issues are often analyzed independently, but when a state construes its long-arm statute to confer jurisdiction to the fullest extent permitted by the due process clause, . . . the inquiry collapses into the single question of whether exercise of personal jurisdiction comports with due process." Bell Paper Box, 22 F.3d at 818. Because the Missouri long-arm statute extends jurisdiction to all cases in which due process permits the exercise of personal jurisdiction, Clune v. Alimak AB, 233 F.3d 538, 541 (8th Cir. 2000), the Court's inquiry is limited to whether the exercise of jurisdiction over the defendant comports with due process. See Romak, 384 F.3d at 984.[4]

---

[4] The Eighth Circuit has recently opined that district courts, applying Missouri law, should analyze whether a defendant's conduct satisfies the Missouri long-arm statute and, if so, evaluate whether asserting personal jurisdiction over the defendant comports with due process. Myers v. Casino Queen, Inc., 689 F.3d 904, 909-10 (8th Cir. 2012) (adopting Bryant v. Smith Interior Design Grp., Inc., 310 S.W.3d 227, 231 (Mo. 2010)). However, the result in this case does not turn on whether the defendant's conduct satisfies the Missouri long-arm statute; instead the dispositive issue is whether asserting personal jurisdiction over AHL comports with due process. Therefore, the Court only addresses whether asserting personal jurisdiction over AHL comports with due process. Viasystems, Inc., 646 F.3d at 593 n.2.

"Due process requires [that there be sufficient] minimum contacts between the non-resident defendant and the forum state such that maintenance of the suit does not offend traditional notions of fair play and substantial justice." Burlington, 97 F.3d at 1102 (internal quotations and citations omitted). "The defendant's conduct and connection with the forum state must be such that defendant should reasonably anticipate being haled into court there." Id. "The minimum contact inquiry focuses on whether the defendant purposely availed itself of the privilege of conducting activities within the forum state and thereby invoked the benefits and protections of its laws." Steinbuch v. Cutler, 518 F.3d 580, 586 (8th Cir. 2008) (citation omitted). "This 'purposeful availment' requirement ensures that a defendant will not be haled into a jurisdiction solely as a result of 'random,' 'fortuitous,' or 'attenuated' contacts, or of the 'unilateral activity of another party or a third person.'" Burger King Corp. v. Rudzewicz, 471 U.S. 462, 475 (1985) (citations omitted).

Two theories are used to evaluate minimum contacts – general jurisdiction and specific jurisdiction. Dever, 380 F.3d at 1073. A court may exercise general jurisdiction over a nonresident defendant who has "continuous and systematic" contacts with the forum state, even when "the cause of action or alleged injury is unrelated to those contacts or has no connection with the forum state." Riceland Foods, Inc. v. SCF Marine, Inc., No. 4:09CV830 CDP, 2009 WL 2928764, at *3 (E.D. Mo. Sept. 9, 2009) (citations omitted). A court may exercise specific personal jurisdiction over a nonresident defendant who has "purposely directed its activities at the forum state and the claim arose out of or relates to those activities." Steinbuch, 518 F.3d at 586 (citation omitted). If the Court determines that a defendant has minimum contacts with the forum state, "these contacts may [then] be considered in light of other factors to determine whether the [exercise] of personal jurisdiction would comport with 'fair play and substantial

justice.'" Burger King, 471 U.S. at 476 (citation omitted) (setting forth factors which establish the reasonableness of jurisdiction).

When resolving a personal jurisdiction inquiry, the Eighth Circuit has instructed courts to consider the following five factors: "(1) the nature and quality of a defendant's contacts with the forum state; (2) the quantity of such contacts; (3) the relation of the cause of action to the contacts; (4) the interest of the forum state in providing a forum for its residents; and (5) the convenience of the parties." Dever, 380 F.3d at 1073-74 (citation omitted).[5] The primary factors (factors 1 through 3) relate to consideration of a defendant's contacts, that is, the minimum contacts analysis. Lakin v. Prudential Sec., Inc., 348 F.3d 704, 711-12 (8th Cir. 2003). The secondary factors (factors 4 and 5) relate to consideration of traditional notions of fair play and substantial justice, or the due process or reasonableness analysis. Id. at 712 n.11. In Epps v. Stewart Information Services Corporation, the Eighth Circuit explained:

> [A]nother wrinkle is added [to the general jurisdiction inquiry] when the defendant is a nonresident parent corporation. In that situation, personal jurisdiction can be based on the activities of the nonresident corporation's in-state subsidiary, but only if the parent so controlled and dominated the affairs of the subsidiary that the latter's corporate existence was disregarded so as to cause the residential corporation to act as the nonresidential corporate defendant's alter ego. If the residential subsidiary corporation is the alter ego of the nonresident corporate defendant, the subsidiary's contacts are those of the parent corporation's, and due process is satisfied. [Moreover,] a corporation is not doing business in a state merely by the presence of its wholly owned subsidiary. However, the fiction of corporate entity may be disregarded, where one corporation is so organized and controlled and its affairs are so conducted that it is, in fact, a mere instrumentality or adjunct of another corporation. Even a non-owned corporation may act as agent for another corporation. . . .

---

[5] The third factor distinguishes between specific and general jurisdiction.

327 F.3d at 648-49 (internal citations omitted) (emphasis in original omitted).[6]

AHL, in support of its argument, cites Eighth Circuit cases holding that a subsidiary's mere presence in a forum is insufficient to subject its parent company to personal jurisdiction. See Epps, 327 F.3d at 642 and Steinbuch v. Cutler, 518 F.3d 580 (8th Cir. 2008).

The plaintiff in Epps brought a class action suit against a non-resident holding company, which owned stock in various companies, including an in-state title and guaranty company. The plaintiff alleged the non-resident defendant illegally compensated realty companies and brokers in violation of the Real Estate Settlement Procedures Act. Specifically, the plaintiff argued the non-resident defendant exercised significant control of its subsidiary, which was a forum defendant, such that the subsidiary was merely an instrumentality or adjunct of the parent company. The defendant responded that, other than its ownership in an Arkansas company, it had no ties to the state of Arkansas. The district court dismissed the plaintiff's complaint for lack of personal jurisdiction. In affirming the trial court, the court of appeals wrote: "[T]he general rule is that a parent corporation that owns a subsidiary–even wholly owns a subsidiary–is not present in a state merely because the subsidiary is there." Id. at 650. The court noted that when a non-resident parent corporation is added, personal jurisdiction can be based on activities of the nonresident corporation's in-state subsidiary, but only if the parent "*so controlled and dominated* the affairs of the subsidiary that the latter's corporate existence was disregarded so as to cause the residential corporation to act as the nonresidential corporate defendant's alter ego." Epps, 327 F.3d at 649-50 (citations omitted ) (emphasis added).

In this case, AHL, as the parent corporation, is not subject to the Court's general

---

[6] Since plaintiff has not alleged that the Court should pierce the corporate veil of AHL, the Court will not inquire into this area.

jurisdiction. Because plaintiff has failed to submit any evidence suggesting AHL "controlled and dominated the affairs" of Liberty, the Court has no reservations concluding AHL was not acting as Liberty/Athene Annuity's alter ego. Further, as the Eighth Circuit has held, a parent corporation is not present in a state of one of its subsidiary simply because the subsidiary resides there. Epps, 327 F.3d at 650. "[AHL's] mere ownership of [Liberty/Athene Annuity] is too distant and limited a contact with [Missouri] to justify subjecting it to the [] Court's exercise of personal jurisdiction." Id.

Lastly, the Court notes that plaintiff has failed to meet his burden of proving jurisdiction by submitting any affidavits, testimony, or other documents in response to AHL's challenge to jurisdiction. Rather, plaintiff rests on the conclusory allegations in his brief and in his complaint to establish minimum contacts. "Where the assertions in a plaintiff's complaint are contested, this is not enough." Dever, 380 F.3d at 1074 (citing Block Indus. v. DHJ Indus., Inc., 495 F.2d 256, 260 (8th Cir. 1974), and Jet Charter Serv., Inc. v. W. Koeck, 907 F.2d 1110, 1112 (11th Cir. 1990)).

### III. Conclusion

Accordingly, it is hereby

ORDERED that Athene Holding Ltd.'s Combined Motion to Dismiss for Lack of Personal Jurisdiction, Failure to State a Claim, and Lack of Valid Service (Doc. #38) is granted.

/s/ Scott O. Wright
    SCOTT O. WRIGHT
    Senior United States District Court

Dated: 12/19/2012